UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| **CHAMBERS OF**<br>**JAMES K. BREDAR**<br>**U.S. MAGISTRATE JUDGE** | **101 WEST LOMBARD STREET**<br>**BALTIMORE, MARYLAND 21201**<br>**(410) 962-0950**<br>**(410) 962-2985 FAX** |

February 9, 2009

TO ALL COUNSEL OF RECORD

    Subject: *Saint Annes Development Company, LLC, et al. v. Neal Trabich, et al.*
          Civil No. WDQ-07-1056

Dear Counsel:

    This matter has been previously referred to me for resolution of discovery disputes. Before the Court is Plaintiffs' Motion to Overrule Objections at Deposition and to Compel Defendant Terry Trabich to Answer Questions; in addition to seeking the Court's ruling on objections, Plaintiffs are asking the Court to award attorneys' fees incurred in connection with the motion. (Paper No. 127, p. 1.) The matter has been fully briefed in Defendants' Supplemental/Amended Opposition to Plaintiffs' Motion (Paper No. 133, incorporating Paper No. 132) and Plaintiffs' Reply (Paper No. 134). No hearing is necessary. Local Rule 105.6. The MOTION is GRANTED IN PART AND DENIED IN PART.

    The undersigned entered a ruling on a similar motion pertaining to the deposition of Ms. Trabich's husband, Neal Trabich. (Paper No. 126 ("November 4 Order").) As noted in that ruling, the Court has already entered partial summary judgment in Plaintiffs' favor on the claim of breach of contract and awarded damages of $2,999,792.71 plus post-judgment interest. (Paper No. 86.) Remaining issues in the case include claims of fraud and conspiracy to defraud. (Paper No. 1.)

    Plaintiffs deposed Ms. Trabich on June 19, 2008. (Paper No. 127, Exh. 1.) As occurred in Mr. Trabich's deposition on July 9, 2008, Defendants' counsel objected many times to various questions and instructed Ms. Trabich not to answer on grounds of either attorney-client privilege or spousal communications privilege or both. (Paper No. 127 Supp. Mem. pp. 2-3.) Plaintiffs argue that Ms. Trabich failed to establish valid grounds for assertion of these privileges, that she waived any privileges she might have had to certain questions by responding on the merits in Defendants' Answer as well as an Answer and Affidavit filed in a related New York case, and that her participation in a fraudulent course of conduct defeated any available privilege as to other questions. (*Id.*) Plaintiffs also contend that Ms. Trabich's counsel once improperly instructed her not to answer on grounds of relevancy and, in another instance, improperly coached her not to answer due to a claimed privilege when the real objection to the question was based on relevancy. (*Id.* p. 4.) The factual background for analysis of Plaintiffs' motion was set forth in the November 4 Order:

        Neal and Terry Trabich and Ronald and Irene Coruzzi entered into a Facility
    Agreement in May 2006 with Saint Annes Development Company ("SADC").

(Paper No. 110, Exh. 3.) Under the agreement, SADC agreed to arrange a $1,000,000 line of credit, through a bank, for the Trabiches and Coruzzis to use for the sole purpose of financing construction of Saint Annes golf course and clubhouse in Delaware. (*Id.*) One of the considerations given was an agreement by Terry Trabich to grant SADC a mortgage on the Trabiches' New York residence, which was titled in her name; SADC agreed not to record the mortgage in exchange for the Trabiches' agreement not to put any further encumbrances on their property ahead of SADC's unrecorded mortgage. (*Id.*) To carry out SADC's obligations under the agreement, Aaron Young, a principal in SADC, arranged for a friend, Gerald David, to secure a line of credit through Wachovia Bank; Young personally guaranteed repayment. (Paper No. 34, Exhs. 8 & 10; Paper No. 110, p. 5.) Trabich immediately drew down the entire one million dollars and deposited it into the Trabiches' joint account. (Paper No. 110, p. 5.) Plaintiffs indicate that $350,000 of that amount went to Terry Trabich and $100,000 went to an entity called Global Golf. (*Id.*)

Neal Trabich is owner and president of Global Golf. (Paper No. 110, Exh.10.) Gordon Lenz is owner of an entity called Confer Bethpage. (*Id.*) On November 3, 2006, Global Golf, Neal Trabich, and his wife, Terry Trabich, sued, among others, Aaron Young (a plaintiff in the instant suit) and Saint Annes Development Company ("SADC") (also a plaintiff in the instant suit) to void the May 2006 Facility Agreement and accompanying promissory note and consulting agreement at issue in the present case; Jay Edmond Russ was the attorney filing this lawsuit in New York. (*Id.* Exh. 5.) On December 15, 2006, Global Golf assigned golf concession rights at Bethpage (N.Y.) State Park to Confer Bethpage. (*Id.* Exh. 10.) On December 21, 2006, Terry Trabich executed a mortgage note on the Trabiches' residence for a loan of $500,000 from Gordon Lenz; Jay Edmond Russ was the notary public on the note. (*Id.* Exh. 8.) That mortgage note was recorded on January 5, 2007. (*Id.* Exh. 9.) The defendants in the New York case were served in February or early March 2007. (Paper No. 110-2, p. 6.)

Another lawsuit was brought by an entity named AP Links (also controlled by Aaron Young and his co-principal, Peter Rubin) in the District of Maryland against Confer Bethpage, Gordon Lenz, Global Golf, and Neal and Terry Trabich. *AP Links, LLC v. Global Golf, Inc., et al.*, No. CCB-08-705, Paper Nos. 1 & 6. This Court determined it lacked personal jurisdiction over Confer Bethpage and Terry Trabich and transferred the case to the Eastern District of New York. *Id.* Paper Nos. 27 & 29. In the Court's Memorandum Opinion, it was noted that Neal Trabich was hired as Confer Bethpage's Director of Golf at a yearly salary of $350,000 sometime after Gordon Lenz created Confer Bethpage on October 19, 2006; Confer Bethpage's designated agent was Daniel Rosenthal, who was of counsel to Jay Russ's law firm. *Id.* Paper No. 26, p. 3.

(Paper No. 126, pp. 3-4.)

Case 1:07-cv-01056-WDQ   Document 147   Filed 02/09/09   Page 3 of 14
Letter to Counsel - *Saint Annes v Trabich*
Page 3
February 9, 2009

As this Court ruled in the November 4 Order, the law of the forum state in a federal diversity action controls the applicability of a claim of privilege; in the instant case, that is the law of Maryland.  (*Id.* p. 1.)  *See Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 285 n.5 (4th Cir. 2000) (in diversity case, "the availability of an evidentiary privilege is governed by the law of the forum state," citing Fed. R. Evid. 501).  However, this Court in *Hill v. Huddleston*, 263 F. Supp. 108 (D. Md. 1967), predicted, in the absence of authoritative Maryland precedent, that Maryland courts would apply the law of the state that has the most significant relationship with the communication to a claim of privilege asserted at a deposition.  *Id.* at 110 & n.2 (noting that Maryland courts have relied upon the Restatement of the Law Second, Conflict of Laws, in their decision-making and applying present-day section 139 thereof).  *See also Hare v. Family Publications Service, Inc.*, 334 F. Supp. 953, 960-61 (D. Md. 1971) (finding that law of New York, which otherwise would govern question of privilege for communication having most significant relationship with that state, would not apply because it did not recognize an accountant-client privilege and, therefore, applying Maryland law because absence of accountant-privilege would violate Maryland's public policy).  The Court is not aware of a Maryland case that contradicts these two decisions.  Thus, New York law as to privilege would seem to apply since the communications at issue took place there and involved New York citizens, the Trabiches, and because there is no real issue of public policy as in *Hare*.  *See also Aetna Cas. & Sur. Co. v. Lloyd's London*, 676 N.Y.S.2d 727, 730 n.4 (N.Y. Sup. Ct. 1998) (applying New York rather than English law because communications at issue occurred in New York), *aff'd*, 692 N.Y.S.2d 384 (N.Y. App. Div. 1999).  Evidentiary privileges are to be strictly construed in a fashion that is consistent with their purposes. *See Priest v. Hennessy*, 431 N.Y.S.2d 511, 514 (N.Y. 1980) ("It has long been recognized that 'the attorney-client privilege constitutes an "obstacle" to the truth-finding process, the invocation of which should be cautiously observed to ensure that its application is consistent with its purpose.'" (citations omitted)).

A.

The Court first considers the issue of attorney-client privilege.  In New York, that privilege attaches only to confidential communications made by a client to an attorney for the purpose of obtaining legal advice or service. *Priest*, 431 N.Y.S.2d at 514.  The burden of proving each element of the privilege rests on the party asserting it.  *Id.*  Under the Federal Rules of Civil Procedure,

> [w]hen a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must:
> (i) expressly make the claim; and
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Rule 26(b)(5)(A).

Consistent with Rule 26(b)(5)(A), the District Court of Maryland has promulgated Guideline 6 as an adjunct to its Local Rules. Under that Guideline pertaining to the assertion of a privilege at a deposition, when the claimant has not provided information as to the basis for privilege, then

> the person seeking disclosure shall have reasonable latitude during the deposition to question the witness to establish other relevant information concerning the assertion of privilege, including: (i) the applicability of the particular privilege being asserted; (ii) any circumstances which may constitute an exception to the assertion of the privilege; (iii) any circumstances which may result in the privilege having been waived; and (iv) any circumstances that may overcome a claim of qualified privilege.

D. Md. Loc. R. App. A, Guideline 6.

Defendants have advanced an interesting, but ultimately unsuccessful, argument that Plaintiffs had an "affirmative burden . . . to 'make a record that would permit meaningful judicial evaluation of the privilege claimed, to include the nature of the privilege claimed, and the basic rationale for asserting the privilege,'" that Plaintiffs failed to carry their affirmative burden, and that, therefore, Plaintiffs' motion must be denied. (Paper No. 133, p. 3.) As authority, Defendants cite the treatise by Judge Paul W. Grimm, Charles S. Fax, and Paul Mark Sandler, *Discovery Problems and their Solutions* 102 (2005) ("*Discovery Problems*"). Defendants have misconstrued the cited authority and Guideline 6, to which *Discovery Problems* refers. Neither Guideline 6 nor *Discovery Problems* shifts the burden of proof on the issue of privilege from the party asserting the privilege to the opposing party; instead, those authorities merely offer a suggested framework for the mechanics of making a record for evaluation of a claimed privilege. Thus, *Discovery Problems* states:

> The inquiring lawyer should make sure that the information [provided by the claimant's lawyer setting forth the basis for the asserted privilege] complies with Rule 26(b)(5) and the guidance of the above cited cases, and should be prepared to conduct additional examination of the witness to learn sufficient facts about the nature of the privilege asserted, the general type of information at issue, and whether there are any facts that would support an argument that the privilege does not apply or has been waived. . . . If [the defending lawyer] had merely said . . . "Objection—instruct not to answer on the ground of privilege," the interrogating lawyer should have followed up with questions establishing that the communication was between the lawyer and client only, with no one else present, that it involved legal advice as opposed to a nonprivileged topic, and that such communication was never divulged to another.

*Discovery Problems* 103-04. Notably, the material on page 102 of *Discovery Problems* that is quoted by Defendants is derived from a parenthetical of one of the cited cases referred to in the preceding excerpt, *Moloney v. United States*, 204 F.R.D. 16, 20-21 (D. Mass. 2001), and is equally distorted in its treatment by Defendants; at no point did *Discovery Problems* or the parenthetical for the *Moloney* case refer to an "affirmative burden" on the inquiring lawyer to make a record or suffer

denial of a motion to compel if he did not. In fact, *Discovery Problems* pointedly observed, "Unless counsel asserting the privilege can establish that each of these elements is satisfied, the privilege cannot be invoked." *Discovery Problems* 101. That fairly refutes Defendants' argument.

Beyond that, Defendants have grossly misinterpreted this Court's November 4 Order by their additional contention that it had "noted, in order to support a Motion to Compel and override the assertion of a privilege, the record must 'contain enough information to test the privilege with respect to the question in issue.'" (Paper No. 133, pp. 3-4.) What this Court said was the following:

> The record does not contain enough information to test the privilege with respect to the question in issue. Assertion of the privilege can only be validated by reference to facts that establish the confidential nature or lack thereof for a particular communication. . . . If Plaintiffs reconvene the deposition of Mr. Trabich, appropriate questions may be asked to explore the applicability of the spousal communications privilege.

(Paper No. 126, p. 8.) The November 4 Order did not place an affirmative burden on Plaintiffs to disprove the applicability of a privilege asserted by Defendants. Further, it must be pointed out that the Court *overruled* Defendants' objection to the question in issue and *granted* Plaintiffs' motion to compel. (*Id.*)

The foregoing discussion is perhaps a long way of saying that the burden remains on the Defendants to establish their entitlement to the claimed privileges, and if they do not carry their burden, then they may not refuse to answer deposition questions on that basis. This principle applies to both the attorney-client privilege and the spousal communications privilege asserted by Defendants.

Plaintiffs have highlighted thirteen instances when their counsel questioned Ms. Trabich and the response was a claim of attorney-client privilege[1]:

1. "Ma'am, what's Confer Bethpage Inc.?"     167:21-22 [2]

2. "Isn't it true, Mrs. Trabich, that you were aware that New York State and/or Suffolk County was investigating Global Golf prior to your execution of [the May 2006 Facility Agreement]?"     186:23–187:8

---

[1] Some of these instances were also times when Ms. Trabich declined to answer based on the spousal communications privilege. Analysis of that privilege will be made separately.

[2] All transcript references are to Deposition of Terry Trabich, June 19, 2008, attached as Exhibit 1 to Plaintiffs' motion (Paper No. 127).

Case 1:07-cv-01056-WDQ   Document 147   Filed 02/09/09   Page 6 of 14
Letter to Counsel - *Saint Annes v Trabich*
Page 6
February 9, 2009

3. "Let's look at Bethpage.[3]  Bethpage was relinquished by assignment of the facility agreement in 2006.  Who received the assignment?"     194:11-14

4. "Well, did your attorney send you a draft complaint, a draft answer to look at?"
    11:14-16

5. "Did you authorize your attorney to file an answer on your behalf?"     12:10-11

6. "And without disclosing the sum and substance of any communication with Mr. Devack, what was the general nature of his representation of you 15 years earlier?"
    81:2-5

7. "And did you authorize Mr. Russ to send to this entity Monzack, Mersky[, McLaughlin and Browder] a statement of your financial condition as of November 1, 2007?"
    164:9-12

8. "What's the basis for your denial [in the Answer filed by Defendants in this case] of the allegation in paragraph 23 [of the Complaint]?"[4]     162:8-9

9. [Referring to an affidavit made by Terry Trabich on December 26, 2007:] "Let's look at paragraph five.  You write, or I'm sorry, you swore under oath that 'the transaction was based entirely upon the credit of Gerald David and his wife which Wachovia Bank accepted as security for the credit facility.' . . . What is the basis for your belief as to the sentence that I just read and that you swore to on December 26, 2007?"
    204:21-6

10. "I would like you to tell me what your attorney said to you with regard to the sentence 'the transaction was based entirely upon the credit of Gerald David and his wife which Wachovia accepted as security for the credit facility'?"     206:7-12

11. "Let's go to paragraph 13 on page three.  You swear that 'prior to the commencement of this action, Mr. Russ was informed by Mr. Young that Mr. Young and/Mr. Rubin [sic] were going to pay off the credit facility at Wachovia Bank to remove any exposure or involvement of Gerald David and his wife.'  When did Mr. Russ make this statement to you?"     231:10-18

---

[3] Bethpage:  This refers apparently to the golf concession contract held by Global Golf on the golf course at Bethpage, New York, State Park.  *See supra*, p. 2.

[4] Paragraph 23 of the Complaint alleged:  "An attorney for the Trabiches told Mr. Young that the Trabiches and Coruzzis cannot repay the $1,000,000, and had no intention of fulfilling its [sic] obligations to pay the various fees provided for within the Agreement." (Paper No. 1, p. 6.)

Case 1:07-cv-01056-WDQ   Document 147   Filed 02/09/09   Page 7 of 14
Letter to Counsel - *Saint Annes v Trabich*
Page 7
February 9, 2009

12. [Referring to Defendants' Answer filed in this case:] "The first part of your answer to paragraph 15 states as follows:  'Defendants admit that Neal Trabich arranged with Aaron Young to provide Mr. Trabich and defendant Ronald Coruzzi with a one million dollar credit facility.'  Do you see that? [Ms. Trabich answered, "Yes."]  What was the basis for your admission of that allegation?"             60:10-18

13. "I am going to follow up on my deposition question.  When did you speak with counsel in preparation for this deposition?"             259:9-12

A number of these questions, specifically, Questions 1 through 4, 6, 8, 9, and 12, do not request Ms. Trabich to disclose attorney-client communications.  Instead, they request facts, which are not protected by the attorney-client privilege.  *See Niesig v. Team I*, 559 N.Y.S.2d 493, 497 (N.Y. 1990) (citing *Upjohn v. United States*, 449 U.S. 383, 395-96 (1981)).  *See also In re Allen*, 106 F.3d 582, 604 (4th Cir. 1997) (same).  Additionally, Questions 8, 9, and 12 ask Ms. Trabich to disclose the basis for her assertions in court filings.  As a general principle, she cannot make assertions of fact in court documents while also claiming attorney-client privilege to shield the basis for her assertions; she has waived that privilege because she is deemed to have testified in those filings.  *See Brown v. United States*, 356 U.S. 148, 154-55 (1958) (concluding that a witness who voluntarily testifies in his own behalf subjects himself to cross-examination and may not claim privilege against self-incrimination for cross-examination); *In re Edmond*, 934 F.2d 1304, 1308-09 (4th Cir. 1991) ("An affidavit operates like other testimonial statements to raise the possibility that the witness has waived the Fifth Amendment privilege"; "[T]he Fifth Amendment privilege cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose of making statements to support a summary judgment motion."); *Nutramax Laboratories, Inc. v. Twin Laboratories, Inc.*, 32 F. Supp. 2d 331, 334-36 (D. Md. 1999) (corporate designee waived privilege against self-incrimination by testifying through affidavits and at deposition).

Defendants take issue with the reliance on legal authority pertaining to the testimonial waiver of the privilege against self-incrimination, implicitly arguing that it is inapplicable to testimonial waiver of the attorney-client privilege.  (Paper No. 133, p. 24.)  Defendants fail to offer a reason for treating the attorney-client privilege as more sacrosanct than the privilege against self-incrimination, and the Court believes that any argument on that basis is without merit.  Thus, to the extent that a testimonial assertion is made, then Ms. Trabich may not claim a privilege for the basis of her assertion.

That conclusion is clear as to Question 9, pertaining to the affidavit filed by Ms. Trabich in the New York case, and as to Question 12, pertaining to a factual admission in Defendants' Answer. It is less clear as to Question 8, which pertains to the denial by Defendants of Paragraph 23 of the Complaint.  Whether a simple denial in a responsive pleading is sufficient to put a confidential communication at issue, *see, e.g., Deutsche Bank Trust Co. v. Tri-Links Investment Trust*, 837 N.Y.S.2d 15,  23 (N.Y. App. Div. 2007) ("'At issue' waiver of [attorney-client] privilege occurs where a party affirmatively places the subject matter of its own privileged communication at issue in litigation, so that invasion of the privilege is required to determine the validity of a claim or

Case 1:07-cv-01056-WDQ   Document 147   Filed 02/09/09   Page 8 of 14
Letter to Counsel - *Saint Annes v Trabich*
Page 8
February 9, 2009

defense of the party asserting the privilege, and application of the privilege would deprive the adversary of vital information"), would seem to depend upon a defendant's subsequent amplification of that response.  Under Rule 8(b)(2), Federal Rules of Civil Procedure, "[a] denial must fairly respond to the substance of the allegation"; additionally, in accordance with Rule 11(b)(4), an answer to a complaint represents to the Court that a denial, unless specifically based upon a lack of knowledge or information, is "warranted on the evidence."  Thus, asking a party to provide the factual basis for a denial is designed to test if a denial is warranted on the evidence.

When Question 8 was posed at Ms. Trabich's deposition, defense counsel objected and instructed her not to answer

> because the only way you would know the truth or non truth of that statement is through consultation with counsel because the allegation in the complaint is that an attorney for the Trabich's [sic] told Mr. Young A, B, C and D.  The only way this witness would know whether that allegation is true or not true is through a communication with counsel.

(Paper No. 127, Exh. 1, 162:10-20.)  To the extent that Plaintiffs' counsel sought a factual basis for Ms. Trabich's denial of Paragraph 23 of the Complaint, the question was clearly proper.  However, defense counsel's subsequent amplification of the denial indicated that it was premised entirely upon a communication with counsel.  Presuming that Defendants would assert that the communication with counsel was confidential, the Court believes that denial of the Motion to Compel with respect to Question 8 is appropriate.  The MOTION TO COMPEL is GRANTED as to Questions 1 through 4, 6, 9, and 12.  The MOTION TO COMPEL is DENIED as to Question 8.  Questions 5, 7, 10, 11, and 13 require further analysis.

Question 5 asks the deponent whether she authorized her attorney to file Defendants' Answer in her behalf.  Arguably, this question requests disclosure of a communication from Ms. Trabich to her counsel.  Whether the communication, presuming such occurred, was in confidence is unknown; Ms. Trabich has not provided information to elucidate this point.  However, giving her the benefit of the doubt, the Court would expect her to claim that this communication with her attorney was in confidence. Consequently, the MOTION TO COMPEL is DENIED as to Question 5.  Even so, the Court observes that she has given it no reason not to believe that she consented to the filing of the Answer on her behalf, and until the Court receives reliable information to the contrary, it will continue to assume that is the case.  If Ms. Trabich were to contest consent on that point, though, then she would put into issue a communication between her and her attorney, thereby waiving the attorney-client privilege.

Question 7 asks Ms. Trabich whether she authorized her attorney, Jay Russ, to send to a third party a statement of her and her husband's financial condition.  What is not at issue is the contents of the financial statement, which was disclosed to Plaintiffs.  Preliminarily, the Court presumes that this communication may be considered a confidential communication between attorney and client for the purpose of obtaining legal services; therefore, it falls within the attorney-client privilege. Plaintiffs have offered two rationales for compelling an answer to this question.  The first is that Ms.

Case 1:07-cv-01056-WDQ   Document 147   Filed 02/09/09   Page 9 of 14
Letter to Counsel - *Saint Annes v Trabich*
Page 9
February 9, 2009

Trabich waived any privilege attaching to her authorization to Russ because whether he was authorized was put into issue by her. (Paper No. 127 Supp. Mem. p. 9.) Plaintiffs assert:

> In response to questions about the contents of the financial condition statement, Mrs. Trabich invoked the spousal privilege. Thus, the fact of whether she authorized Mr. Russ to deliver this document *to a third party* bears on whether any spousal communications about the contents of the statement were intended to be confidential.

(*Id.* p. 9 n.6 (citations omitted).) Plaintiffs' argument appears to conflate the two, distinct privileges at issue, i.e., attorney-client privilege and spousal communications privilege. To the extent the Court understands this argument, Plaintiffs seem to be saying that any privilege for spousal communications regarding the contents of the statement was lost when Ms. Trabich authorized Russ to send the statement to a third party. This is not a compelling argument. Conversations between Mr. and Ms. Trabich about the statement's contents are separate from any communication between Ms. Trabich and Russ regarding whether to send the statement to a third party. Because they are separate communications implicating separate privileges, the Court fails to see how the one communication acts as a waiver of the other communication's privilege.

The second argument offered by Plaintiffs on Question 7 is that an attorney-client privilege covering Ms. Trabich's authorization to Russ to send the financial statement to a third party is unavailable to her under the crime-fraud exception to the privilege. *See Surgical Design Corp. v. Correa*, 799 N.Y.S.2d 584, 586 (N.Y. App. Div. 2005) (noting that client communications in furtherance of a fraudulent scheme are not protected by the attorney-client privilege). Specifically, Plaintiffs say that "any privilege that may have inhered in a communication by Mrs. Trabich to Mr. Russ is obviated by the crime-fraud exception . . . because the Trabiches sought Mr. Russ's services in furtherance of their fraudulent scheme." (*Id.* p. 9.) The Court faced a similar contention when it ruled upon Plaintiffs' motion to compel in reference to Mr. Trabich's deposition. In that earlier proceeding, the Court noted that the only question that seemed to be aimed at communications in furtherance of a fraudulent scheme was broadly worded and could encompass legitimate attorney-client communications; additionally, the undersigned indicated a lack of information before it from which a conclusion could be drawn about the existence of a fraudulent scheme. (Paper No. 126, pp. 2-3.) Defendants have interpreted the latter point as the Court's rejection of a crime-fraud exception to the attorney-client privileges claimed in this case. (Paper No. 133, p. 23.) That interpretation is more expansive than what the Court intended, which was not to foreclose assertion of the argument but was, instead, only to note that it could not make a conclusive determination of the issue based upon the facts of which the undersigned was then aware.

The Court first must consider the process involved in deciding whether to apply the crime-fraud exception to the attorney-client privilege. This process is described in *In re Grand Jury Proceedings, Thursday Special September Term 1991*, 33 F.3d 342 (4th Cir. 1994):

> All of our prior decisions indicate that the crime-fraud exception can be invoked on the basis of a *prima facie* showing of fraud or crime. We do not require absolute proof of fraud or crime. A *prima facie* showing, however, does seem to contemplate

Case 1:07-cv-01056-WDQ   Document 147   Filed 02/09/09   Page 10 of 14
Letter to Counsel - *Saint Annes v Trabich*
Page 10
February 9, 2009

> an opportunity to rebut, or a shifting of the burden. Initially, the party asserting a privilege bears the burden of establishing that privilege. Likewise, the party invoking the crime-fraud exception to the privilege bears the initial burden of making a *prima facie* showing of fraud or crime. The crime-fraud standard does seem to contemplate the possibility that the party asserting the privilege may respond with evidence to explain why the vitiating party's evidence is not persuasive.

*Id.* at 352 (footnote omitted).

Unlike the *Grand Jury Thursday Special* case, the proponents of the crime-fraud exception here did not submit their evidence *ex parte* to the Court; instead, Plaintiffs relied solely upon material in court filings. Thus, it cannot be said that Defendants have not had an opportunity to respond with evidence to explain why Plaintiffs' evidence is not persuasive, presuming that Plaintiffs have established a *prima facie* case. Nevertheless, to the extent that the November 4 Order could be interpreted as conclusive on the point, at least at the discovery stage, the Court could, in an abundance of caution, offer an additional opportunity to Defendants to refute Plaintiffs' evidence. The Court, however, believes that resolution of the matter is possible without resorting to protracted proceedings.

Plaintiffs have theorized that the Trabiches intended to defraud them of a million dollars when they entered into the May 2006 Facility Agreement and that their actions since, including the $500,000 mortgage note to Gordon Lenz and the New York lawsuit to declare the Agreement unenforceable, were designed to achieve their goal. In the current motion, Plaintiffs have referred to information that is helpful in addressing the issue of crime-fraud exception. Plaintiffs indicate that the law firm to whom Russ sent the financial statement was one "which specializes in, among other things, bankruptcy and restructuring." (Paper No. 134, p. 10.) That fact could be an indicator that the Trabiches intended to declare bankruptcy, thereby putting into jeopardy repayment of the loan balance due to Plaintiffs. Also, when Plaintiffs responded to Defendants' motion for protective order, filed after the November 4 Order, they provided reference to an earlier filing, ruled upon by the presiding judge in the case, that contained additional information regarding the conduct of Defendants. (Paper Nos. 102, 123, 130, p. 1.) The timeline and details in Paper No. 102 evidence a troubling course of conduct from which one could infer that the Trabiches have dealt improperly with various creditors, including the Plaintiffs, and that they have utilized the services of Russ's firm in this endeavor.[5]

Is the foregoing sufficient to establish a *prima facie* case of fraud? The Fourth Circuit's decision in *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215 (4th Cir. 1976), offers some guidance on that point:

---

[5] The Court offers no opinion on whether Russ shares any culpability with the Trabiches for their conduct, nor is that consequential to its analysis. "[T]he attorney-client privilege may be vitiated without showing that the attorney knew of the fraud or crime." *In re Grand Jury #5*, 401 F.3d 247, 252 (4th Cir. 2005).

> [W]hile a prima facie showing need not be such as to actually prove the disputed fact, it must be such as to subject the opposing party to the risk of non-persuasion if the evidence as to the disputed fact is left unrebutted. *While such a showing may justify a finding in favor of the offering party, it does not necessarily compel such a finding*.

*Id.* at 1220 (emphasis added) (citations omitted).

Although the evidence provided by Plaintiffs strikes the Court as perhaps sufficient to justify a finding in their favor, the Court is not persuaded that the evidence compels that result. This is a close call, but the circumstances counsel modesty and caution because once the privilege is ruled invalid, any damage from compelled disclosure cannot be undone. When considering the two options, the route taken here does the lesser harm. Of particular concern in the Court's analysis is that a conclusion at this point whether fraud has occurred precedes a fact-finder's decision on the ultimate issue of fraud. The choice made here is not irrevocable, however. The Court's determination now that the crime-fraud exception does not apply to the Trabiches' relationship with Russ does not preclude a later, contrary finding by the presiding judge at trial, where he will have the advantage of observing the witnesses and hearing their testimony. *See Duplan*, 540 F. 2d at 1222. In light of the Court's conclusion, the MOTION TO COMPEL is DENIED as to Question 7. The Court, though, notes the following caveat: If Ms. Trabich were to deny authorization to Russ for transmitting the financial statement to Monzack, Mersky, then she would put that communication into issue, and even if she could otherwise claim privilege for it, the privilege would then be defeated.

Question 10 was, "I would like you to tell me what your attorney said to you with regard to the sentence 'the transaction was based entirely upon the credit of Gerald David and his wife which Wachovia accepted as security for the credit facility'?" In isolation, the question could be interpreted as asking for an attorney-client communication. However, it is clear from the context in which the question was posed that Ms. Trabich had claimed an attorney-client privilege for a statement in an affidavit that she had sworn was based upon personal knowledge. (Paper No. 127, Exh. 1, 204:21–205:6.) As observed earlier, Ms. Trabich cannot testify to something while claiming a shield of privilege for the basis of her testimony. On that ground alone, the claim of privilege is invalid. In addition, Ms. Trabich acknowledged that Jay Russ was not her attorney on December 26, 2007, when she signed the affidavit (*Id.* 208:11–209:7), and she failed to put on the record any facts to show that she was in a client relationship with any other attorney. Thus, she cannot claim privilege as to Question 10, and the MOTION TO COMPEL as to that question is GRANTED.

Question 11 was premised upon a statement by one of the Plaintiffs, Aaron Young, to Jay Russ, the contents of which were reflected in Ms. Trabich's affidavit. (*Id.* 231:10-18.) Plaintiffs' counsel effectively asked, when did Russ relay that communication to her. Given that the contents of the communication are not confidential, any argument that the timing of the relay of that communication is somehow privileged is illogical. The MOTION TO COMPEL is GRANTED as to Question 11.

Case 1:07-cv-01056-WDQ   Document 147   Filed 02/09/09   Page 12 of 14
Letter to Counsel - *Saint Annes v Trabich*
Page 12
February 9, 2009

Question 13 asks when did Ms. Trabich speak with counsel in preparation for her deposition. Defendants asserted attorney-client privilege for this question but have failed to argue to the Court the rationale for that assertion. Since it was acknowledged that Ms. Trabich spoke with counsel to prepare for her deposition (Paper No. 127, Exh. 1, 256:22–257:2, 261:24–262:2), and since the question did not seek disclosure of confidential communications between client and counsel, Defendants have not established that the timing of the deposition preparation impinges upon the attorney-client privilege. The MOTION TO COMPEL as to Question 13 is GRANTED.

B.

The Court next addresses the spousal communications privilege. Under New York law,

> A husband or wife shall not be required, or, without consent of the other if living, allowed, to disclose a confidential communication made by one to the other during marriage.

N.Y. C.P.L.R. 4502(b) (McKinney 2007). The rule requires any waiver to be joint. Advisory Committee Notes to N.Y. C.P.L.R. 4502. The rule protects only confidential communications.

> The statutory privilege does not protect "all the daily and ordinary exchanges between the spouses, but merely those which would not have been made but for the absolute confidence in, and induced by, the marital relationship." Not forbidden are "ordinary conversations relating to matters of business which there is no reason to suppose [one spouse] would have been unwilling to hold in the presence of any person."

*Fed. Dept. Stores, Inc. v. Esser*, 409 N.Y.S.2d 353, 354-55 (N.Y. Sup. Ct. 1978) (citations omitted).

Plaintiffs have referred in their Motion to forty-six instances when questions posed to Ms. Trabich resulted in a claim of spousal privilege. (Paper No. 127 Supp. Mem. pp. 2-4.) These questions will not be addressed individually here. Defense counsel's position during the deposition was, "If it comes from a communication with her spouse, I am going to assert spousal privilege." (Paper No. 127, Exh. 1, 126:12-14.) Clearly, such a position is not congruent with applicable law; its overbreadth is apparent because it seeks to apply the privilege to *every* communication between Mr. and Ms. Trabich. The Court has reviewed the entire deposition of Ms. Trabich and has concluded that she has failed to establish entitlement to the privilege for any of the questions posed that are in contention in Plaintiffs' Motion. To the extent that Plaintiffs' counsel tried to obtain information to test the privilege, Ms. Trabich's usual response was, "I don't recall." It bears repeating that the party claiming a privilege has the burden of proving a valid basis for the claim. Defendants have failed to do so. The Court could potentially be convinced that the privilege applies in *some* instances of communication between the Trabiches, but Defendants have not put on the record the requisite specific information that would allow a thoughtful analysis of the privilege's applicability.

Case 1:07-cv-01056-WDQ   Document 147   Filed 02/09/09   Page 13 of 14
Letter to Counsel - *Saint Annes v Trabich*
Page 13
February 9, 2009

If Plaintiffs reconvene Ms. Trabich's deposition, then Defendants may not assert the spousal communications privilege unless the record contains specific facts that validate the assertion of privilege. Moreover, the privilege does not protect underlying facts from disclosure and may not be used in a blanket fashion to shield information about business transactions or other such events. *See G-Fours, Inc. v. Miele*, 496 F.2d 809, 811-13 (2nd Cir. 1974) (applying New York law and holding that inquiry of judgment debtor's spouse as to existence and location of her husband's bank accounts and his ownership and transfer of property did not invade marital privilege). In addition, questions about the basis of testimonial assertions in affidavits, pleadings, or depositions may not be avoided by the claim of privilege. *See* this Letter Order, *supra*, p. 7. Finally, the deposition of Ms. Trabich is subject to the ruling made earlier by the Court during the deposition of Mr. Trabich as to the lack of spousal privilege for matters to which Aaron Young was within the orbit of confidence, i.e., discussions between the Trabiches regarding the May 2006 Facility Agreement prior to its signing. (Paper No. 126, p. 7.)

As to all of the questions to which Defendants have asserted spousal communications privilege, the Court denies their objections and GRANTS Plaintiffs' MOTION TO COMPEL.

C.

Plaintiffs have also argued that Defendants' counsel, in one instance, improperly instructed Ms. Trabich not to answer on the ground of relevancy and, in another instance, improperly coached her not to answer due to a claimed privilege when the real objection to the question was based on relevancy. (Paper No. 127 Supp. Mem. p. 4.) The first instance was Question 13, which asked Ms. Trabich when she met with counsel in preparation for her deposition. Counsel made a two-prong objection based on attorney-client privilege and on relevancy. (Paper No. 127, Exh. 1, 259:9–266:8.) The Court does not agree that the instruction not to answer was premised upon relevancy; a reasonable interpretation of defense counsel's statement is that, while he objected on both grounds, the instruction not to answer was based upon attorney-client privilege. The propriety of the objection as to attorney-client privilege has been addressed *supra*, page 12.

The second instance was in response to a series of questions about various golf course operations overseen by Mr. Trabich or the Trabiches together. The question posed was, "Given your definition of successful as you have just identified it for me, is Northport still a successful operation?" (*Id.* 15:23–16:2.) Defendants' counsel objected on the ground of relevancy in a long discourse and colloquy with Plaintiffs' counsel, in the presence of the deponent.[6] (*Id.* 16:3–19:7.) Defense counsel then said:

> If you can answer that question without revealing a communication with your husband and/or your counsel, I will let you answer that question.

---

[6] Defendants' counsel have noted several instances when Ms. Trabich was asked to step out of the deposition room. (Paper No. 133, p. 25 n.5.) This was not one of them.

(*Id.* 19:8-14.) Given that Ms. Trabich had not asserted privilege to the question, it was improper for defense counsel to coach her in this fashion. *See* Fed. R. Civ. P. 30(c)(2) ("An objection must be stated concisely in a nonargumentative and nonsuggestive manner.") *and* 1993 Advisory Committee Note ("Depositions frequently have been unduly prolonged, if not unfairly frustrated, by lengthy objections and colloquy, often suggesting how the deponent should respond."). The Court's conclusion is reinforced by reference to the Local Rules:

> During the taking of a deposition, it is presumptively improper for an attorney to make objections which are not consistent with Fed. R. Civ. P. 30(d)(1) [now 30(c)(2)]. Objections should be stated as simply, concisely and non-argumentatively as possible to avoid coaching or making suggestions to the deponent, and to minimize interruptions in the questioning of the deponent . . . . If an attorney desires to make an objection for the record during the taking of a deposition that reasonably could have the effect of coaching or suggesting to the deponent how to answer, then the deponent, at the request of any of the attorneys present . . . shall be excused from the deposition during the making of the objection.

D. Md. Loc. R. App. A, Guideline 5b.  Counsel is cautioned to observe these rules or to risk imposition of sanctions.

D.

Accordingly, Plaintiffs' MOTION TO COMPEL is DENIED as to Question 5, Question 7, and Question 8 and GRANTED in all other respects.  The Court declines to award attorneys' fees.  Anticipating that Defendants may file a motion to limit the length of a second deposition of Ms. Trabich, the Court concludes that at least half of her first deposition was spent in unmeritorious objections and argument by Defendants' counsel.  Therefore, Plaintiffs shall be permitted to depose Ms. Trabich for an additional three-and-one-half hours.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an Order.

Very truly yours,

/s/

James K. Bredar
United States Magistrate Judge


JKB/cw
cc: The Hon. William D. Quarles, Jr.
    Court file
    Chambers file