IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

*

SAINT ANNES DEVELOPMENT CO.,    *
LLC, *et al.*,

                     *

   Plaintiffs,

                     *

      v.              CIVIL NO.:  WDQ-07-1056

                     *

NEAL TRABICH, *et al.*,

                     *

   Defendants.

                     *

*   *   *   *   *   *   *   *   *   *   *   *   *

MEMORANDUM OPINION

Saint Annes Development Company, LLC ("SADC") and Aaron Young sued Neal and Terry Trabich (the "Trabiches") and Ronald and Irene Coruzzi (the "Coruzzis") for fraud and breach of contract. This Court granted partial summary judgment for SADC on the breach of contract claims and denied the Trabiches' motion for reconsideration. After a bench trial, the Court entered judgment for SADC and Young on the fraud claims. On August 17, 2011, the Fourth Circuit affirmed in part, vacated in part, and remanded the case. Having reconsidered the parties' arguments and examined new authorities cited by counsel, the Court has concluded that the Trabiches have not shown that justice requires modification. Thus, the Court will grant in part and deny in part their motion for reconsideration: the

Court will reconsider the partial summary judgment order but deny modification of its order approving the accelerated consulting fees; the Court will also correct the final judgment on Young's claim so that it is entered only against Neal Trabich.

I. Background

SADC is a Maryland limited liability company; Young is one of its members. ECF No. 85 at 1. On May 2, 2006, SADC entered a financing agreement (the "Facility Agreement") with the Trabiches and Coruzzis to construct a golf course. *Id.* SADC agreed to arrange a credit facility with a third-party lender to enable the Trabiches and Coruzzis to borrow up to $1 million on a revolving line of credit. *Id.* at 1-2. The Trabiches and Coruzzis promised to repay the third-party lender in full by December 31, 2009. ECF No. 225 at 10.

In consideration for arranging the line of credit, the Trabiches and Coruzzis agreed to pay SADC annual fees equal to 10 percent of the principal balance borrowed under the credit facility. *Id.* at 9. The Trabiches also agreed to pay SADC consulting fees for 20 years after the credit facility ended -- $100,000 annually for the first 10 years and $75,000 annually for the next 10 years. *Id.*

A colleague of Young arranged a $1 million line of credit through Wachovia Bank. ECF No. 225 at 12. The Trabiches and

2

Coruzzis executed a promissory note (the "Note") whereby they agreed to repay Wachovia Bank for use of the line of credit. ECF No. 85 at 2-3.  Neal Trabich withdrew the $1 million and deposited it into his personal bank account.  ECF No. 85 at 2; ECF No. 225 at 13.

On November 3, 2006, the Trabiches sued Wachovia, SADC, and Young in New York state court, alleging, *inter alia*, that the Facility Agreement was unenforceable because it was usurious. ECF No. 85 at 3; ECF No. 225 at 15-16.  In a verification attached to the complaint, Neal Trabich swore to various factual allegations that were inconsistent with the Facility Agreement's terms.  ECF No. 225 at 15-16.  For example, he swore that the Facility Agreement had no commercial purpose for the Trabiches, even though the agreement specified that the funds borrowed would be used only to finance golf course construction.  *Id.* at 8, 16.  Neal Trabich also alleged that, when executing the agreement, he had not expected SADC to provide consulting services, and SADC had provided none.  *Id.* at 15-16.

The Trabiches continued to pay interest to Wachovia through October 19, 2007.  ECF No. 85 at 3.  On November 19, 2007, the Trabiches' New York attorney told SADC that they would make no more interest payments.  *Id.*

On November 19, 2007, SADC issued a notice of default and demanded that the Trabiches make the required payments.  ECF No.

85 at 3.  On December 5, 2007, SADC issued a notice of default

and demand to cure to the Coruzzis.  *Id.* at 3-4.  No one cured

the defaults.  *Id.* at 4.  On December 14, 2007, SADC repaid

Wachovia $1,012,292.71 to pay off the principal, accrued

interest, and costs on the loan under the Facility Agreement.

ECF No. 225 at 20.  To obtain the funds to pay off that loan,

Young borrowed $1,012,292.71 against his line of credit with PNC

Bank and transferred those funds to SADC.  ECF No. 225 at 20.

Through trial, Young paid $66,182.31 in interest on the PNC

loan.[1]  *Id.*  On December 15, 2007, SADC elected to accelerate all

payments due under the Facility Agreement and Note.  *Id.*  The

Trabiches and Coruzzis failed to respond.  *Id.*

SADC and Young sued the Trabiches and Corruzis, alleging

fraud and breach of contract.[2]  In its breach of contract claims

against the Coruzzis and Trabiches, SADC sought recovery of the

principal and interest SADC paid to Wachovia, plus certain other

---

[1] The Court admitted evidence of Young's PNC loan over the
objections of the Defendants, who argued that the loan was
irrelevant because it was Young's personal debt, not SADC's.
Trial Tr., Part. II, at 399:8-16.

[2] The Plaintiffs sued on April 24, 2007, after the Trabiches
violated the Facility Agreement by borrowing $500,000 from a
third party and executing a mortgage on their home to secure the
loan.  ECF No. 85 at 4; ECF No. 225 at 1, 18.  The Trabiches had
secured their obligations to SADC by promising to deliver a
mortgage on their home and to not allow any "further liens or
other encumbrances ahead of SADC."  ECF No. 225 at 10-11.  The
Plaintiffs further alleged that the Trabiches and Coruzzis had
repudiated the Facility Agreement in October 2006.  Compl. ¶ 22.

payments and fees due under the Facility Agreement.  ECF No. 85 at 6.  SADC also sought from the Trabiches the accelerated total amount of the consulting fees under the agreement: $1,750,000 plus post-judgment interest.  *Id.*

On May 21, 2008, the Court granted partial summary judgment for SADC on the breach of contract claims.  ECF No. 86. The Court granted judgment of $1,249,729.71 to SADC against all Defendants.  *Id.* at 1.  That amount included the $1,012,292.71 that SADC paid as principal on the Wachovia loan.  ECF No. 225 at 20, 27 n.19.  The Court also granted a $1,750,000 judgment to SADC against the Trabiches for the consulting fees.  ECF No. 85 at 6; ECF No. 86 at 1.

On June 5, 2008, the Trabiches moved for reconsideration. ECF No. 92.  They argued that material issues of fact were in dispute, precluding summary judgment on the Wachovia claim.  ECF No. 92 at 1-2.  As to the consulting fees, the Trabiches argued that acceleration amounted to an unenforceable penalty, and any award for future consulting fees must be reduced to present value.  *Id.* at 4.  On August 12, 2008, the Court denied the motion, finding that the Trabiches had failed to satisfy the requirements for amending a judgment under Fed. R. Civ. P. 59(e).  ECF No. 104 at 6; ECF No. 105.

A bench trial on the remaining claims was held on September 14 and 15, 2009.  On August 23, 2010, the Court entered judgment

for SADC on its fraud claim against the Trabiches (Count 4) and

for Young on his fraud claim against Neal Trabich (Count 5).[3]

ECF No. 226.  Although Young had brought his fraud claim against

Neal Trabich only, Compl. 9, the order held both Trabiches

jointly and severally liable to Young for damages of $66,182.31,

ECF No. 226 at 1.  In an accompanying memorandum opinion, the

Court explained that Neal and Terry Trabich had committed fraud,

causing Young and SADC to lose $1,078,475.02: the principal

($1,012,292.71) on the PNC loan, which SADC used to pay off the

Wachovia loan; and the interest ($66,182.31) that Young paid on

the PNC loan.  ECF No. 225 at 23-26.  In its partial summary

judgment order, the Court had granted judgment to SADC on its

breach of contract claims and awarded damages that included the

principal amount due to Wachovia.  *Id.* at 27 n.19.  To avoid

double recovery, the Court awarded the $66,182.31 to Young.  *Id.*

On August 30, 2010, the Court entered a final judgment

based on the partial summary judgment order and the bench trial

order.  ECF No. 229.  There was no accompanying memorandum

opinion.

---

[3] The Court denied the Plaintiffs' civil conspiracy claim against
the Trabiches (Count 7) and Young's constructive fraud claim
against Neal Trabich (Count 6).  ECF No. 226.

The Fourth Circuit affirmed in part[4] and vacated in part. Finding that the Court had applied the wrong standard to the Trabiches' motion for reconsideration, the Fourth Circuit vacated the summary judgment against the Trabiches on the consulting fee claim and remanded for review of the motion under the proper standard.[5]  *Saint Annes Dev. Co.*, 2011 WL 360854, at *3.  The Fourth Circuit also vacated the Court's judgment on Count 5 against Terry Trabich, because Young had not asserted his fraud claim against her.[6]  *Id.* at *4.  The appellate court remanded for correction of the judgment.[7]

---

[4] The Fourth Circuit affirmed the Court's judgment for SADC on its fraud claim against the Trabiches (Count 4) and for Young on his fraud claim against Neal Trabich (Count 5).  *Saint Annes Dev. Co. v. Trabich*, No. 10-2078, 2011 WL 360854, at *3 (4th Cir. Aug. 17, 2011).

[5] The Fourth Circuit held that the Court should not have analyzed the motion for reconsideration under Rule 59(e) because the summary judgment order was not a final judgment: it did not resolve all claims against all parties and was interlocutory and subject to revision at any time.  *Saint Annes Dev. Co.*, 2011 WL 360854, at *3.  "The power to reconsider or modify interlocutory rulings is committed to the discretion of the district court, and that discretion is not cabined by the heightened standards for reconsideration governing final orders."  *Id.* (internal citations and quotation marks omitted).

[6] The Fourth Circuit noted that the Court may have structured the judgment as it did to avoid double recovery through the damages awarded on the various claims.  *Saint Annes Dev. Co.*, 2011 WL 360854, at *4.

[7] The Fourth Circuit noted that, on remand, the Court is "free to structure the judgment as necessary to avoid double recovery," but must "explain any such adjustments in sufficient detail."  *Saint Annes Dev. Co.*, 2011 WL 360854, at *4.

On December 16, 2011, the Court held a hearing on the remanded issues.

II. Analysis

   A. The Trabiches' Motion for Reconsideration

   Under Fed. R. Civ. P. 54(b), "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time" before the entry of a final judgment.  The Fourth Circuit has said that a court's discretion to review an interlocutory order is "not subject to the strict standards applicable to motions for reconsideration of a final judgment,"[8] but rather, falls "within the plenary power of the Court . . . to afford such relief . . . as justice requires."[9]  Precisely

---

[8] *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003).  Under Rule 59(e), a motion to alter or amend a final judgment may be granted only "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).  Under Rule 60(b), a court may grant relief from a judgment or order for: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing party; (4) voidness; (5) satisfaction; or (6) any other reasons that justifies relief. *Aikens v. Ingram*, 652 F.3d 496, 500 & n.3 (4th Cir. 2011).

[9] *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1473 (4th Cir. 1991) (internal citation and quotation marks omitted).

what justice requires, however, is sometimes "less clear."[10]
Although Rules 59(e) and 60(b) do not govern reconsideration of
an interlocutory order, the Fourth Circuit has suggested that at
least parts of those rules may guide a court's analysis.[11]   A
court should be mindful of "finality and judicial economy," but
the law of the case[12] "cannot limit the power of a court to
reconsider an earlier ruling."  *Am. Canoe Ass'n*, 326 F.3d at
515.

In considering whether to revise interlocutory decisions,
district courts in this circuit have looked to whether movants

---

[10] *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F.
Supp. 2d 298, 331 (D. Md. 2000); *Bragg v. Robertson*, 183 F.R.D.
494, 496 (S.D. W. Va. 1998).

[11] *See Fayetteville Investors*, 936 F.2d at 1470, 1472 (declining
to "thoroughly express our views on the interplay of Rules 60,
59, and 54" but citing *Gridley v. Cleveland Pneumatic Co.*, 127
F.R.D. 102 (M.D. Pa. 1989), in which Rule 60(b) guided the
court's reconsideration of an interlocutory order); *Pritchard v.
Wal-Mart Stores, Inc.*, 3 F. App'x 52, 53 (4th Cir. 2001) (per
curiam) (citing an earlier case applying Rule 60(b) to hold that
a district court did not err in denying a motion to reconsider
an interlocutory order).  *See also Superior Bank, F.S.B.*, 197 F.
Supp. 2d at 332-39 (guided by Rules 59(e) and 60(b), court
declined to amend interlocutory order because movant had
presented no new facts and had failed to show that other cases
dictated a different result).

[12] This doctrine holds that "earlier decisions of a court become
law of the case and must be followed unless (1) a subsequent
trial produces substantially different evidence, (2) controlling
authority has since made a contrary decision of law applicable
to the issue, or (3) the prior decision was clearly erroneous
and would work manifest injustice."  *Am. Canoe Ass'n*, 326 F.3d
at 515 (*citing Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69
(4th Cir. 1988)).

presented new arguments[13] or evidence,[14] or whether the court has "obviously misapprehended a party's position or the facts or applicable law."[15]  Similar principles guide district courts in

---

[13] *See, e.g., McLaurin v. E. Jordan Iron Works, Inc.*, 666 F. Supp. 2d 590, 596 (E.D.N.C. 2009) (declining to consider movant's new arguments because "[g]enerally, motions to reconsider are not appropriate vehicles to advance arguments already rejected by the Court or new legal theories not argued before the ruling.") (*citing Zurich Capital Markets, Inc. v. Conglianese*, 383 F. Supp. 2d 1041, 1045 (N.D. Ill. 2005)), *aff'd*, 410 F. App'x 630 (4th Cir. 2011); *United States v. Duke Energy Corp.*, 218 F.R.D. 468, 474 (M.D.N.C. 2003) ("a party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider an interlocutory order") (*citing Fidelity State Bank v. Oles*, 130 B.R. 578 (D. Kan. 1991).  *Accord Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again"; movants must show "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice") (internal citation and quotation marks omitted).

[14] *Duke Energy Corp.*, 218 F.R.D. at 474 (*citing Anderson v. United Auto Workers*, 738 F. Supp. 441, 442 (D. Kan. 1990)).

[15] *Duke Energy Corp.*, 218 F.R.D. at 474 (*quoting Anderson*, 738 F. Supp. at 442).  In *Duke*, the district court rejected the motion for reconsideration, noting that the movant had presented no new evidence, and "mere disagreement over the Court's legal analysis" was insufficient for reconsideration.  *Id.  Accord Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) ("A motion for reconsideration performs a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.") (internal citation and quotation marks omitted).

other circuits that use the "as justice requires" standard.[16]

In seeking reconsideration of the partial summary judgment order, the Trabiches argued that a default in payment should not trigger payment of fees for future services not yet rendered. ECF No. 92 at 4. To the extent that there is an enforceable agreement to pay consulting fees, the Trabiches argued that the Coruzzis are jointly responsible pursuant to paragraph 2(b) of the June 2006 Amendment. *Id.* at 3. They also asserted that the consulting fee award should be reduced to present value. *Id.* at 4.

The Court has reconsidered the parties' arguments,[17] including new authorities cited by counsel,[18] and concludes that

---

[16] *See, e.g., In Defense of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 70, 75 (D.D.C. 2008) ("Considerations a court may take into account under the 'as justice requires' standard include whether the court 'patently' misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred."); *Young v. Murphy*, 161 F.R.D. 61, 62 (N.D. Ill. 1995) (court may reconsider interlocutory order if it is "consonant with justice," as when the court "patently misunderstood a party," "made a decision outside the adversarial issues presented," or "has made an error not of reasoning but of apprehension") (internal citation and quotation marks omitted).

[17] The Trabiches first argued that default should not trigger payment of the consulting fees in their opposition to the Plaintiffs' motion for summary judgment. *See* ECF No. 57 at 18-19. The Trabiches raised the other two arguments -- that the Coruzzis are jointly liable, and that the accelerated consultant fees should be reduced to present value -- in their motion for reconsideration. *See* ECF No. 92 at 3-4. When deciding the original motion for reconsideration, the Court found that the

the Trabiches have not shown that justice requires this Court to revise its order granting partial summary judgment to SADC.  On the merits, the Trabiches' motion merely reiterates arguments that the Court has considered and rejected.

Although the consulting fees were not due until the facility terminated in 2009, the Defendants' nonpayment of interests and other fees authorized SADC to accelerate *all* sums due, including the consulting fees.  Under Maryland contract law, "the primary source for determining the intention of the parties is the contract itself." *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 674 A.2d, 106, 142 (Md. Ct. Spec. App. 1996).  Contracts are interpreted objectively; thus, "the clear and unambiguous language of a written agreement controls[.]"  *First Union Nat'l Bank v. Steele Software Sys.*

---

Coruzzis should not be jointly liable for the consultant fees, because SADC had not requested judgment against them on that claim.  *Id.* at n.3.  The Court rejected the argument about reduction to present value, because it had not been raised earlier.  ECF No. 104 at 6.  On remand, the Court has considered the Trabiches' present value argument.  *See* pp. 13-15 *infra*.

[18] The parties submitted new authorities on (1) what standard of review the Court should apply to the motion for reconsideration, and (2) whether the accelerated fees should be reduced to present value.  *See* ECF Nos. 57, 253, 254.  The Court has included many of these cases in its analysis.  *See supra* n.8 (*citing Am. Canoe Ass'n*, 326 F.3d at 514), n.13 (*citing Official Comm. of the Unsecured Creditors of Color Tile, Inc.*, 322 F.3d at 167), *and infra* n.20 (*citing Saul Holdings Ltd. P'ship v. Raquel Sales, Inc.*, Case No. 293777-V, 2009 WL 4249136 (Md. Cir. Ct. 2009), *and Carter v. Tokai Fin. Servs., Inc.*, 500 S.E.2d 638, 641 (Ga. Ct. App. 1998)), p.14 (*citing Barrie School v. Patch*, 933 A.2d 382, 388 (Md. 2007)).

*Corp.*, 838 A.2d 404, 447 (Md. Ct. Spec. App. 2003).  The "Rights and Remedies upon Default" section of the Facility Agreement states that "[u]pon occurrence of an Event of Default," SADC could "declare the entire outstanding Principal Amount, together with all accrued interest and all other sums due under the FACILITY AND THIS AGREEMENT, to be immediately due."  Pls.' Mot. S.J. Ex. 5 (Facility Agreement ¶ 5).

A plain reading of the contract also shows that the Trabiches alone, not the Coruzzis, agreed to pay the consulting fees over a twenty-year period.  *See* Facility Agreement ¶ 2(b). SADC never requested that judgment be entered against the Coruzzis for breach of the consulting provisions.  Thus, the Coruzzis are not jointly responsible for paying those fees.

The Trabiches have not shown any change in the law, *see, e.g.*, *In Defense of Animals*, 543 F. Supp. 2d at 75, they have presented no new evidence or facts, nor have they shown that the Court "obviously misapprehended" their position or the applicable facts.  *See Duke Energy Corp.*, 218 F.R.D. at 474; *McLaurin*, 666 F. Supp. 2d at 596.

The Court is also not persuaded that it must reduce the accelerated consulting fees to present value. As the parties seeking "to set aside the bargained for contractual provision," the Trabiches "have the burden of proving that the clause should not be enforced" as written.  *Barrie School v. Patch*, 933 A.2d

13

382, 388 (Md. 2007).  The parties' intent is the "decisive
element" in determining whether a clause is an unenforceable
penalty, and the Court must consider "the subject matter, the
language of the contract and the circumstances surrounding its
execution."  *Id.* at 389 (internal citation and quotation marks
omitted).  The Trabiches have presented no evidence that the
parties intended the acceleration clause as a penalty.[19]  This
was a commercial contract executed by sophisticated
businesspeople.  Neal Trabich has a masters degree in business
administration from Columbia University.  ECF No. 218 at 33.
Had the Trabiches wanted to avoid paying accelerated fees
without a discount to present value, they could have negotiated
that outcome.[20]  The Court cannot relieve a party of an agreement

---

[19] To the contrary, the Trabiches initially argued that the
consultant fees were not a penalty, but interest on the SADC
loan to them.  ECF No. 57 at 14.

[20] *See, e.g., Jarstad v. Tacoma Outdoor Recreation, Inc.*, 519
P.2d 278, 281 (Wash. Ct. App. 1974) (lower court made no error
in not reducing accelerated payments to present value, because
contract did not call for reduction), *cert. denied*, 83 Wash.2d
1014 (1974); *State Farm Mut. Auto. Ins. Co. v. Nationwide Mut.
Ins. Co.*, 516 A.2d 586, 592 (Md. 1986) ("As a general rule,
parties are free to contract as they wish."); *Bausch & Lomb Inc.
v. Utica Mut. Ins. Co.*, 625 A.2d 1021, 1037 (Md. 1993)
("Maryland courts are reluctant to obviate voluntary bargains on
public policy grounds, and to diminish the public interest in
having individuals . . . exercise broad powers as they
structure their own affairs.").  At the December 16, 2011
hearing, the Trabiches relied on several cases in which the
parties had negotiated contract terms calling for discounting
accelerated payments to present value.  *See, e.g., Saul Holdings
Ltd. P'ship v. Raquel Sales, Inc.*, Case No. 293777-V, 2009 WL

14

merely because he later believes it was a bad bargain. *Shriver v. Druid Realty Co. of Balt. City*, 131 A. 815, 817 (Md. 1926).

Furthermore, the Trabiches have not cited -- and the Court has not found -- any Maryland case requiring accelerated payments to be reduced to present value.[21] The Trabiches' argument that acceleration without discount is a penalty is "tautological and unhelpful." *Paramount Pictures Corp. v. Johnson Broad. Inc.*, 2006 WL 1406870, at *4 (S.D. Tex. May 19, 2006). "[M]aking all payment due immediately, without any discount to present value, is precisely what any acceleration clause is intended to do." *Id.* The Trabiches' position is further weakened by their failure to provide the Court with a figure by which the accelerated fees should be discounted. For all these reasons, the Court has reconsidered, but will deny modification of, the partial summary judgment order.

B. Correction of the Judgment on Count 5

Terry Trabich appealed the $66,182.31 judgment awarded against her on Count 5, because Young had not named her as a

---

4249136 (Md. Cir. Ct. 2009); *Carter v. Tokai Fin. Servs., Inc.*, 500 S.E.2d 638, 641 (Ga. Ct. App. 1998). Their agreement lacked such a term.

[21] The Trabiches' citation to *Bethlehem Steel Co. v. Jackson*, 199 Md. 642, 87 A.2d 841 (1952) is unavailing. ECF no. 100 at 2. That case did not involve a contract with an acceleration clause; rather, it considered whether a court was statutorily required to reduce the attorney fee award in a workers' compensation case.

Defendant in that claim. *Saint Annes Dev. Co.*, 2011 WL 360854, at *4. The Plaintiffs countered that the Court had structured the judgment as it did to avoid double recovery through the damages awarded on the various claims. *Id.* Recognizing the plausibility of the Plaintiffs' argument, the Fourth Circuit directed the Court to "structure the judgment as necessary to avoid double recovery" but "explain any such adjustments in sufficient detail to facilitate review of that judgment in the event of further appeals." *Saint Annes Dev. Co.*, 2011 WL 360854, at *4.

Upon reconsidering this issue, the Court will enter judgment only against Neal Trabich for the $66,182.31 in interest on the PNC loan. Although both Trabiches committed the fraud that required Young to borrow from PNC, Young's fraud claim was only against Neal Trabich. Compl. 9. Young sued Terry Trabich and others for conspiracy to defraud and commit constructive fraud (Count 7), but the Court denied him judgment on this claim.[22] Compl. 11; ECF No. 229 at 1. Thus, the court will enter judgment for Young against only Neal Trabich.

---

[22] Young alleged that the underlying fraud in the conspiracy count was committed by Neal Trabich, not his wife. Compl. ¶ 59.

The Court rejects the argument Plaintiffs made on appeal: that the Court could hold Terry Trabich liable to Young under Fed. R. Civ. P. 15(b) and 54(c) because although

Young did not demand judgment from Terry Trabich in Count 5 of the Complaint, SADC did demand such judgment from Terry Trabich in Count 4, SADC proved its entitlement to such judgment, the allegations of Count 4 were incorporated into Count 5, and Mr. Young's testimony confirmed that SADC would pay over to him any such monies that it ultimately collected.

Appellee's Br. at 23-25, *Saint Annes Dev. Co.*, 2011 WL 360854. Young borrowed from PNC in his personal capacity, not as a representative of SADC. Thus, SADC had no right to recover from Terry Trabich the interest that Young paid on the PNC loan. *See* Md. Code Ann., Corps. & Ass'ns § 4A-203 (a limited liability company is a legal entity distinct from its members that can borrow money and sue and be sued). *See also Ubom v. Suntrust Bank*, 198 Md. App. 278, 290, 17 A.3d 168, 175-76 (2011) (recognizing that a limited liability company's managing member can guarantee a loan in his personal capacity).

The Plaintiffs also improperly contended that Terry Trabich's liability to Young "was nevertheless tried," allowing Young to amend his complaint to include a fraud claim against Terry Trabich. Rule 15(b)(2) provides that "[w]hen an issue not raised by the pleadings is tried by the parties' . . . implied consent, it must be treated in all respects as if raised in the pleadings." A court may infer consent when the defendant does not object to evidence that establishes the subject of a proposed amendment. *McLeod v. Stevens*, 617 F.2d 1038, 1039 (4th Cir. 1980). But "a court will not [infer] consent to try a claim merely because evidence relevant to a properly pleaded issue incidentally tends to establish an unpleaded claim." *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1043-44 (4th Cir. 1986), *citing McLeod v. Stevens*, 617 F.2d 1038, 1040-41 (4th Cir. 1980). The Defendants' objection to evidence of Young's PNC loan, *see supra* n.1, undermines the argument that Terry Trabich had impliedly consented to be tried for defrauding Young. Even had she remained silent, the Court would not infer her consent: Young is not entitled to amend his complaint because evidence that proved properly pleaded claims (Neal and Terry Trabich defrauded SADC, and Neal Trabich defrauded Young) also tended to prove an unpled claim (that Terry Trabich defrauded Young). *See Quillen*, 789 F.2d at 1043-44.

Rule 54(c) is also unavailing. A court looks to Rule 54(c) to determine "whether the allegations *properly pled and proven* support a theory and type of relief not specified in the

III. Conclusion

For the reasons stated above, the Court will grant the Trabiches' motion for reconsideration but deny modification, and enter judgment against Neal Trabich for Young.

_1/12/12_
Date

_____
William D. Quarles, Jr.
United States District Judge

---

plaintiff's demand for judgment." *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 400 (4th Cir. 1999) (emphasis added) (internal citation and quotation marks omitted).  Young only properly pled civil conspiracy allegations against Terry Trabich (Count 7).  The Court denied that claim.